NO. 09-5256

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA                    Plaintiff - Appellee

v.

MARSHAL WILLIAMS                           Defendant- Appellant

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CORRECTED BRIEF OF THE UNITED STATES

---

**LAWRENCE J. LAURENZI**
**UNITED STATES ATTORNEY**

**ANNE-MARIE SVOLTO**
**ASSISTANT UNITED STATES ATTORNEY**

**WESTERN DISTRICT OF TENNESSEE**
**800 FEDERAL OFFICE BUILDING**
**167 NORTH MAIN STREET**
**MEMPHIS, TENNESSEE 38103**
**(901) 544-4231**

## TABLE OF CONTENTS

**PAGE**

Table of Authorities . . . . . . . . . . . . . . . . . . . ii

Statement of Jurisdiction . . . . . . . . . . . . . . . . ix

Statement Regarding Oral Argument . . . . . . . . . . . . . x

Issues Presented for Review . . . . . . . . . . . . . . . xi

I.   Statement of the Case . . . . . . . . . . . . . . . . 1

II.  Statement of Facts . . . . . . . . . . . . . . . . . 4

III. Summary of Argument . . . . . . . . . . . . . . . . 18

IV.  Argument . . . . . . . . . . . . . . . . . . . . . . 22

    1.   The Defendant knowingly and voluntarily waived his
        right to counsel after engaging in a lengthy
        inquiry with the trial court. . . . . . . . . . . 22

    2.   The district court acted properly when it permitted
        the Defendant to wear non-prison clothing at trial,
        but declined to provide the Defendant with a budget
        to purchase clothing. . . . . . . . . . . . . . . 27

    3.   The evidence presented at trial, viewed in the
        light most favorable to the United States, was more
        than sufficient to convict the Defendant . . . . . 30

    4.   The district court properly instructed the jury on
        the *mens rea* for the offense of mailing a
        threatening communication when it instructed the
        jury that the Defendant has to intend to mail the
        threat. . . . . . . . . . . . . . . . . . . . . . 37

    5.   The district court was entitled to proceed without
        a presentence report when it determined that the
        court had the necessary facts before it to sentence
        the Defendant . . . . . . . . . . . . . . . . . . 39

    6.   The district court's decision to proceed with the
        sentencing hearing via video conferencing was
        proper because the Defendant's own threatening
        actions left the court with no other option . . . . 42

7.    The Defendant's *pro se* complaints not raised by
      Defendant's initial brief are unfounded and have no
      support in the record.  . . . . . . . . . . . . .    44

V.    Conclusion . . . . . . . . . . . . . . . . . . . .    58

VI.   Certificate of Compliance  . . . . . . . . . . . .    59

VII.  Certificate of Service . . . . . . . . . . . . . .    60

VIII. Designation of Records . . . . . . . . . . . . . .    61

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                        **PAGE**

*Adams v. United States ex rel. McCann*
    317 U.S. 269(1942) . . . . . . . . . . . . . . . . . .  23

*Bass v. United States*
    239  F.2d 711 (6th Cir. 1957) . . . . . . . . . . . .  38

*Campbell v. United States*
    364 F.3d 727 (6th Cir. 1957) . . . . . . . . . . . .  58

*Chapman v. California*
    386 U.S. 18 (1967) . . . . . . . . . . . . . . . . 27, 28

*Cheese v. United States*
    290 Fed. Appx. 827(6th Cir. August 26, 2008) . . . . . .  47

*Clemens v. U.S. District Court for the Cent. District of Cal.*
    428 F.2d 1175 (9th Cir. 2005) . . . . . . . . . . . .  47

*Estelle v. Williams*
    425 U.S. 501 (1976) . . . . . . . . . . . . . . . . .  28

*Faretta v. California*
    422 U.S. 806 (1975) . . . . . . . . . . . . . . . 22, 23

*Gray v. Moore*
    520 F.3d 616 (6th Cir. 2008) . . . . . . . . . . . .  45

*Hazelwood v. Arnold*
    539 F.2d 1031 (4th Cir. 1976) . . . . . . . . . . . .  41

*Henderson v. Kibbe*
    431 U.S. 145 (1977) . . . . . . . . . . . . . . . . .  38

*Hisrich v. Volvo Cars of North America, Inc.*
    226 F.3d 445 (6th Cir. 2000) . . . . . . . . . . . .  38

*Howard v. Maggio*
    540 F.2d 1280 (5th Cir. 1976) . . . . . . . . . . . .  41

*Illinois v. Allen*
    397 U.S. 337 (1970) . . . . . . . . . . . . . . . . .  45

*In re Triple S Restaurants*, Inc.
     F.3d 405 (6th Cir. 2005) . . . . . . . . . . . . . . . 47

*Jackson v. Virginia*
     443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . 31

*King v. Ford Motor, Co.*
     209 F.3d 886 (6th Cir. 2000) . . . . . . . . . . . . 38

*Liteky v. United States*
     510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . 47

*Massaro v. United States*
     538 U.S. 500 (2003) . . . . . . . . . . . . . . . . . 55

*Roddy v. United States*
     296 F.2d 9 (10th Cir. 1961) . . . . . . . . . . . . . 41

*Tompkin v. Phillip Morris US, Inc.*
     362 F.3d 882 (6th Cir. 2004) . . . . . . . . . . . . 37

*Walker v. Engle*
     703 F.2d 959 (6th Cir. 1983) . . . . . . . . . . . . 57

*Whitman v. Bartow*
     434 F.3d 968 (7th Cir. 2006) . . . . . . . . . . . . 29

*Williams v. Outlaw*
     05-2305 (W.D. Tenn. March 21, 2006) . . . . . . . . . 1, 5

*Williams v. Ray*
     46 Fed. Appx. 598 (10th Cir. Aug. 21, 2002) . . . . . . 4

*Williams v. United States*
     384 F.3d 1232 (10th Cir. 2004) . . . . . . . . . . . 4, 5

*Youn v. Track, Inc.,*
     324 F.3d 409 (6th Cir. 2003) . . . . . . . . . . . . 46

*United States v. Alkhabaz*
     104 F.3d 1492 (6th Cir. 1997) . . . . . . . . . . . . 33

*United States v. Angelus*
     258 Fed. Appx. 840 (6th Cir. Dec. 27, 2007) . . . . . . 47

*United States v. Atman*
     145 F.3d 1333 (6th Cir. 1998) . . . . . . . . . . . . 55

*United States v. Barker*
        553 F.2d 1013 (6th Cir. 1977) . . . . . . . . . . . 49, 50

*United States v. Bass*
        239 F.2d 711 (6th Cir. 1957) . . . . . . . . . . . . . 34

*United States v. Bellrichard*
        994 F.2d 1318 (8th Cir. 1993) . . . . . . . . . . . . 34

*United States v. Broho*
        485 F.3d 904 (6th Cir. 2007) . . . . . . . . . . . . . 41

*United States v. Brown*
        276 F.3d 211 (6th Cir. 2002) . . . . . . . . . . . . . 55

*United States v. Brown*
        367 F.3d 549 (6th Cir. 2004) . . . . . . . . . . . 28, 29

*United States v. Brown*
        557 F.3d 297 (6th Cir. 2009) . . . . . . . . . . . 41, 42

*United States v. Carnes*
        309 F.3d 950 (6th Cir. 2002) . . . . . . . . . . . . . 32

*United States v. Carson*
        560 F.3d 566 (6th Cir. 2009) . . . . . . . . . . . . . 31

*United States v. Chick*
        955 F.2d 45 (6th Cir. 1992) . . . . . . . . . . . . . . 33

*United States v. Cinnamon*
        112 Fed. Appx. 415 (6th Cir. 2004) . . . . . . . . . 56

*United States v. Conder*
        423 F.2d 904 (6th Cir. 1970) . . . . . . . . . . . . . 50

*United States v. Daughenbaugh*
        49 F.3d 171 (5th Cir. 1995) . . . . . . . . . . . . . . 34

*United States v. Dawson*
        563 F.2d 149 (5th Cir. 1977) . . . . . . . . . . . . . 28

*United States v. English*
        925 F.2d 154 (6th Cir. 1991) . . . . . . . . . . . . . 37

*United States v. Evans*
        352 F.3d 65 (2d Cir. 2003) . . . . . . . . . . . . . . 43

*United States v. Faul*
      748 F.2d 1204 (8th Cir. 1984) . . . . . . . . . . . . . . . 48

*United States v. Fortson*
      194 F.3d 730 (6th Cir. 1999) . . . . . . . . . . . . . . . 55

*United States v. Francis*
      170 F.3d 546 (6th Cir. 1999) . . . . . . . . . . . . . . . 53

*United States v. Gadison*
      8 F.3d 186 (5th Cir. 1993) . . . . . . . . . . . . . . . . 51

*United States v. Gall*
      128 S. Ct. 586 (2007) . . . . . . . . . . . . . . . . . . 40

*United States v. Gilmore*
      282 F.3d 398 (6th Cir. 2002) . . . . . . . . . . . . . . . 51

*United States v. Henry*
      545 F.3d 367 (6th  Cir. 2008) . . . . . . . . . . . . . . 53

*United States v. Herrera-Martinez*
      985 F.2d 298 (6th Cir. 1993) . . . . . . . . . . . . . . . 22

*United States v. Howton*
      260 Fed. Appx. 813 (6th Cir. January 16, 2008) . . . . . 18

*United States v. Jones*
      381 F.3d 114 (2d Cir. 2004) . . . . . . . . . . . . . . . 43

*United States v. Lawrence*
      248 F.3d 300 (4th Cir. 2001) . . . . . . . . . . . . . . . 43

*United States v. Lincoln*
      589 F.2d 379 (8th Cir. 1979) . . . . . . . . . . . . . . . 34

*United States v. M/G Transport Servs., Inc.*
      173 F.3d 584 (6th Cir. 1999) . . . . . . . . . . . . . . . 31

*United States v. Malik*
      16 F.3d 45 (2nd Cir. 1994) . . . . . . . . . . . . . . . . 34

*United States v. Martinez*
      588 F.3d 301 (6th Cir. 2009) . . . . . . . . . . . . . . . 18

*United States v. McDowell*
      814 F.2d 245 (6th Cir. 1987) . . . . . . . . 18, 23, 24, 27

*United States v. Miller*
        910 F.2d 1321 (6th Cir. 1990) . . . . . . . . . . . 24, 27

*United States v. Nelson*
        922 F.2d 311 (6th Cir. 1990) . . . . . . . . . . . . . 46

*United Stats v. Parker*
        997 F.2d 219 (6th Cir. 1993) . . . . . . . . . . . . . 57

*United States v. Polson*
        154 F. Supp. 2d 1230 (S.D. Ohio 2001) . . . . . . . . 34

*United States v. Ramsey*
        871 F.2d 1365 (8th Cir. 1989) . . . . . . . . . . . . 48

*United States v. Reaves*
        194 F.3d 1315(6th Cir. 1999) . . . . . . . . . . . . . 49

*United States v. Rigdon*
        459 F.2d 379 (6th Cir. 1972) . . . . . . . . . . . . . 50

*United States v. Ring*
        513 F.2d 1001 (6th Cir. 1975) . . . . . . . . . . . . 38

*United States v. Rivera*
        900 F.2d 1462 (10th Cir. 1990) . . . . . . . . . . . . 57

*United States v. Rogers*
        769 F.2d 1418(9th Cir. 1985) . . . . . . . . . . . . . 28

*United States v. Seltzer*
        794 F.2d 1114 (6th Cir. 1986) . . . . . . . . . . . . 31

*United States v. Shumaker*
        875 F.2d 868 (6th Cir. 1989) . . . . . . . . . . . . . 38

*United States v. Smith*
        907 F.2d 42 (6th Cir. 1989) . . . . . . . . . . . . . 55

*United States v. Tally*
        164 F.3d 989 (6th Cir. 1999) . . . . . . . . . . . . . 31

*United States v. Taylor*
        972 F.2d 1247 (11th Cir. 1992) . . . . . . . . . . . . 34

*United States v. Trujilo*
        376 F.3d 593 (6th Cir. 2004) . . . . . . . . . . . . . 57

*United States v. Waldon*
     206 F.3d 597 (6th Cir. 2000) . . . . . . . . . . . . . 28

*United States v. Warman*
     578 F.3d 320 (6th Cir. 2009) . . . . . . . . . . . . . 57

*United States v. Williams*
     775 F.2d 1295 (5th Cir. 1985) . . . . . . . . . . . 1, 4

*United States v. Williams*
     819 F.2d 605 (5th Cir. 1987) . . . . . . . . . . . . . 1

*United States v. Williams*
     952 F.2d 1504 (6th Cir. 1991) . . . . . . . . . . . . 37

*United States v. Young*
     470 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . 22

## FEDERAL STATUTES

Title 18, United States Code, Section 875 . . . . . . . . . . 33

Title 18, United States Code, Section 876 . . . . . . 32, 33, 38

Title 18, United States Code, Section 3553 . . . . . 40, 41, 42

Title 28, United States Code, Section 2255 . . . . . . 2, 5, 56

## FEDERAL RULES

Federal Rules of Criminal Procedure 17 . . . . . . . . . 48, 49

Federal Rules of Criminal Procedure 32 . . . . . . . . 40,41,43

Federal Rules of Criminal Procedure 43 . . . . . . . . . 42, 43

Federal Rules of Evidence 401 . . . . . . . . . . . . . . . 25

Federal Rules of Evidence 402 . . . . . . . . . . . . . . . 25

## UNITED STATES SENTENCING GUIDELINES

United States Sentencing Guideline Section 6A1.1 . . . . . . 41

## STATEMENT OF JURISDICTION

The district court had jurisdiction in this case pursuant to 18 U.S.C. § 3231, because the Defendant, Marshall Williams, was indicted by a federal grand jury for offenses against the laws of the United States.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which grants this Court jurisdiction over final decisions of the district courts.

## STATEMENT REGARDING ORAL ARGUMENT

The United States, pursuant to Sixth Circuit Rule 9, submits that the briefs adequately set forth the legal issues in this appeal.  The United States, therefore, does not believe that the decisional process would be significantly aided by oral argument.

## <u>ISSUES PRESENTED FOR REVIEW</u>

1.  Whether the Defendant voluntarily, knowingly and intelligently waived his right to counsel when he insisted on representing himself at trial and after the district court engaged in a question and answer colloquy directly derived from this Court's established precedent?

2.  Whether the district court acted properly when it permitted the Defendant to proceed in attire other than his prison uniform so long as the Defendant provided his own clothes?

3.  Whether the evidence at trial was sufficient to establish the guilt of the Defendant beyond a reasonable doubt when the evidence included the threatening letter with the Defendant's name, address and website addresses, and when the Defendant himself confessed multiple times in open court and in filed documents to sending a threatening letter to a federal judge that contained a substance purporting to be anthrax?

4.  Whether the district court's jury instructions accurately informed the jury of the requisite *mens rea* of the offense when the instructions, based on binding Sixth Circuit precedent, were correct statements of the law?

5.  Whether the district court can bypass consultation of a Presentence Report when the district court has all the necessary facts to make a sentencing determination and the Defendant agrees to go forward without a Presentence Report?

6.  Whether the district court can protect the integrity of its courtroom and its procedures by conducting a sentencing hearing via video conferencing when the Defendant levied explicit threats on the district court and the United States Marshal's Service and when the Defendant makes no objection to proceeding via video conference?

7.  Whether the Defendant's *pro se* arguments, which are unsupported by both the record and by applicable law, should be disregarded?

I.

### STATEMENT OF THE CASE

Marshall Williams ("the Defendant") is an inmate who served a portion of his sentence at the Federal Correctional Institute ("FCI") in Memphis, Tennessee.  The Defendant, at the time of the commencement of the current case, was serving a total sentence of 109 years for violations of three federal offenses arising from events in which the Defendant caused the death of his stepfather by means of a pipe bomb in 1984.  *United States v. Williams,* 775 F.2d 1295, 1296-97 (5th Cir. 1985); *United States v. Williams,* 819 F.2d 605 (5th Cir. 1987).

Throughout the Defendant's incarceration, he filed numerous documents and petitions contesting his continued incarceration and alleged misconduct by prison officials.  On April 25, 2005, the Defendant filed a petition for writ of Habeas Corpus in the United States District Court in the Western District of Tennessee.  United States District Judge J. Daniel Breen ("Judge Breen") denied the Defendant's petition on March 21, 2006, on the grounds that the allegations and legal argument lacked merit.  *Williams v. Outlaw,* 05-2305 (W.D. Tenn. March 21, 2006).

On May 8, 2008, the chambers of Judge Breen received an envelope containing a white powder purporting to be anthrax.  The envelope was mailed from the Federal Correctional Institute in Memphis and included the Defendant's name and website addresses.  On May 14, 2008, a federal grand jury indicted and charged the

Defendant with violating 18 U.S.C. § 876(c) which prohibits a person from knowingly depositing or causing to be delivered any communication containing a threat to injure a United States judge. (R.E. #1, Indictment, 05/14/2009).

On May 21, 2008, the district court appointed counsel to represent the Defendant. (R.E. #5, Minute Entry, 05/21/2008). Beginning on May 28, 2008, the Defendant began requesting to represent himself. (R.E. #10, Minute Entry, 5/28/08). On May 28, 2008, the United States moved for a psychiatric exam to determine the Defendant's mental competency to stand trial. (R.E. #12, Motion For Psychiatric Exam, 5/28/08). The court granted the United States' motion on June 23, 2008. (R.E. #24, Order Granting Government's Motion for Psychiatric Exam, 6/23/08).

After repeated conflicts and requests, the district court held a hearing to determine whether the Defendant could proceed, *pro se*, as he wished. (R.E. #47, Report Date, 01/06/2009). On January 6, 2009, the district court granted the Defendant's request to represent himself, appointed "elbow counsel" to assist the Defendant and set the case for trial. (R.E. #47, Report Date, 1/06/09 at TR 29-30).

A jury trial commenced on January 21, 2009. The Defendant represented himself and testified on his own behalf. On January 23, 2009, the jury found the Defendant guilty of Count One of the indictment. Subsequent to the announcement of the jury's verdict,

-2-

the district court determined that a Presentence Report (PSR) was unnecessary in this case, but that if Defendant wished to proceed with the benefit of a PSR, the district court would delay sentencing until a PSR could be prepared. (R.E. #97,Jury Trial, 1/23/09 at TR 500-01). The Defendant agreed that a PSR would not assist the court in making a meaningful sentencing determination. (R.E. #97, Jury Trial, 1/23/09 at TR 501).

The district court attempted to hold a sentencing hearing on February 24, 2009. At that time, after consulting with the U.S. Marshal's Service, elbow counsel and the United States, the district court decided to re-set the sentencing hearing to February 27, 2009 and have the Defendant be present via video conferencing. There were no objections. (R.E. #105, Sentencing Hearing, 2/24/09 at TR 11).

On February 27, 2009, the District court sentenced the Defendant to 60 months imprisonment to run consecutive to the Defendant's 109-year sentence. (R.E. #109, Sentencing Hearing, 2/27/09 at TR 24). The Defendant filed this timely appeal on March 2, 2009. (R.E. #114, Notice of Appeal, 3/02/09). The Defendant filed his initial appellate brief on July 13, 2009. The Defendant filed a supplemental, *pro se* brief on December 7, 2009.

## II.

### STATEMENT OF THE FACTS

Background

On January 27, 1984, the Defendant rigged a coin-operated newspaper dispenser with explosives in Mesquite, Texas. *United States v. Williams,* 775 F.2d 1295, 1297 (5th Cir. 1985). As intended, the Defendant's stepfather was killed when he opened the newspaper dispenser. *Williams,* 775 F.2d at 1297. On October 18, 1984, the Defendant was convicted in the United States District Court for the Northern District of Texas of malicious destruction of property by use of an explosive bomb resulting in death, possession of an unregistered firearm, and unlawful construction of a firearm. The Defendant was sentenced, ultimately, to a term of 109 years imprisonment. *See United States v. Williams,* 775 F.2d 1295 (5th Cir. 1985); *Williams v. Ray,* 46 Fed. Appx. 598 (10th Cir. Aug. 21, 2002).

While in prison, the Defendant protested his continued incarceration vigorously, engaging in disturbing and dangerous behavior, such as multiple escape and suicide attempts, and climbing a tree with a large sign in order to arouse the interest of the media. (R.E. #97, Jury Trial, 1/23/09 at TR 470). The Defendant's protests extended to numerous courts, alleging, *inter*

-4-

*alia*, a miscalculation of his sentencing credits and abuse from prison officials. *See Williams v. United States,* 384 F.3d 1232 (10th Cir. 2004); *Williams v. Outlaw,* 05-030305 (W.D. Tenn. March 21, 2006). His arguments and motions were denied in the Fifth and Tenth Circuit Courts of Appeals, and in the United States District Courts in Kansas and in the Western District of Tennessee. *Williams v. United States,* 384 F.3d 1232 (10th Cir. 2004); *United States v. Williams,* 775 F.2d 1295 (5th Cir. 1985). Specifically, the Defendant has argued repeatedly that the Bureau of Prisons does not possess the legal authority to hold him. *Williams v. Outlaw,* No. 06-5560 (6th Cir. Dec. 5, 2006). The Defendant, however, has already litigated this issue and this Court found no merit to his claims. *Williams v. Outlaw,* No. 06-5560 (6th Cir. Dec. 5, 2006).

On April 26, 2005, the Defendant filed a Petition for Writ of Habeas Corpus in the U.S. District Court in the Western District of Tennessee. Judge Breen denied the Defendant's petition on March 21, 2006. *Williams v. Outlaw,* No. 05-02305 (W.D. Tenn. March 21, 2006). In an apparent reaction to the failure of his claims in various courts, the Defendant mailed several hoax anthrax letters, including the letter at issue in this case. (R.E. #97, Jury Trial, 1/23/09 at TR 476-77; Defendant's *pro se* Supplemental Brief, pg 19).

Defendant's Desire to Proceed *Pro Se* and Pre-Trial Issues

-5-

On May 14, 2008, a federal grand jury sitting in the Western District of Tennessee indicted the Defendant for violating 18 U.S.C. § 876(c) which prohibits an individual from sending or causing to be sent, a threatening communication to a federal judge. (R.E. #1, Indictment, 05/14/2008).

On May 21, 2008, the district court appointed counsel to represent the Defendant. (R.E. #5, Minute Entry, 5/21/08). The Defendant attempted to file numerous documents *pro se* while represented by counsel and asked the Court repeatedly to allow him to proceed without counsel. (R.E. #45, Motion, 12/22/08). The Defendant insisted upon certain defenses and strategies that conflicted with the advice of counsel. (R.E. #45, Motion, 12/22/08).

On January 6, 2009, the district court held a hearing to respond to the Defendant's repeated requests to represent himself. (R.E. #47, Report Date, 1/6/09). The questions were designed to elicit information from the Defendant to determine whether he possessed the requisite knowledge to proceed as his own attorney and whether he understood the dangers of representing himself. (R.E. #47, Report Date, 1/6/09 at TR 20-42).

The district court engaged in a lengthy discussion with the Defendant concerning his prior educational background and legal experience. (R.E. #47, Report Date, 1/6/09 at TR 20-42). The district court learned that Defendant had multiple "self-taught"

-6-

degrees and that the Defendant considered himself a specialist in "federal jurisdiction." (R.E. #47, Report Date, 1/6/09 at TR 22).

The district court, however, did not end its discussion with the Defendant there. The district court explained to the Defendant that "a person who opts for self-representation is not entitled to the battery of resources that [appointed] counsel would be entitled to on [the Defendant's] behalf." (R.E. #47, Report Date, 1/6/09 at TR 25). Moreover, advised the district court, "[a] person who is self-represented is not entitled to those same resources, . . . [the district court] has to tell [the Defendant] that that is something that might be a consequence that you need to consider when you opt for self-representation." (R.E. #47, Report Date, 1/6/09 at TR 26).

The district court further informed the Defendant that much of the evidence he might seek to produce would not be relevant to the charges against him. (R.E. #47, Report Date, 1/6/09 at TR 29). Thus, the district court discussed with the Defendant the charges in the indictment and the potential difficulty in trying this case. (R.E. #47, Report Date, 1/6/09 at TR 27-30). Moreover, at the hearing, the district court admonished the Defendant for prohibiting helpful comments from his appointed counsel. (R.E. #47, Report Date, 1/6/09 at TR 39).

-7-

The district court very clearly warned the Defendant that he was "creating a near impossible situation for anybody to defend you.  [Appointed counsel] stepped to you this morning to encourage you not to say some things . . . You banished him . . . You are your own worst enemy in this matter."  (R.E. #47, Report Date, 1/6/09 at TR 39).  The district court reasoned that the Defendant was entitled to mount his own defense, and that his strategy often placed him in conflict with appointed counsel. (R.E. #47, Report Date, 1/6/09 at TR 29).

The district court concluded that the Defendant had "the requisite knowledge, education and ability to represent [himself] in this matter. [B]ecause of [Defendant's] desire to proceed in certain ways, it puts [the Defendant] in real conflict with counsel and his ethical obligations as an attorney which would make it impossible for [appointed counsel] to represent [the defendant]." (R.E. #47, Report Date, 1/6/09 at TR 29).

Finally, the trial court asked the Defendant whether he wished to proceed with "elbow counsel" to assist the Defendant when necessary.  The Defendant stated he did wish to have "elbow counsel" appointed; the trial court granted that request.  (R.E. #47, Report Date, 1/6/09 at TR 27-30).

On January 21, 2009, the very morning of trial, the Defendant requested the court grant him a budget to purchase clothes for the trial.  (R.E. #85, Jury Trial, 1/21/09 at TR 14).  The district

-8-

court wished to accommodate the Defendant, but noted that no spare
clothing is present in the courthouse. (R.E. #85, Jury Trial,
1/21/09 at TR 15). The district court further explained to the
Defendant that the court does not have a budget for purchasing
clothing. (R.E. #85, Jury Trial, 1/21/09 at TR 16). The district
court explained that if the Defendant's mother, for example, were
to bring clothing for the Defendant, the district court would
"certainly let [the Defendant] go in and change." (R.E. #85, Jury
Trial, 1/21/09 at TR 16). The district court further advised the
Defendant that the court would "question the jury to make sure they
are not biased against [the Defendant] and that they do not take
your clothing into account for purposes of this trial." (R.E. #85,
Jury Trial, 1/21/09 at TR 16). The trial proceeded as scheduled.
(R.E. #85, Jury Trial, 1/21/09 at TR 17).

The Anthrax Letter and Its Impact

Virginia Frasure ("Ms. Frasure") worked as a law clerk to
Judge Breen. (R.E. #85, Jury Trial, 1/21/09 at TR 157). As a law
clerk, Ms. Frasure's duties included researching the law, assisting
the judge with drafting legal opinions, and collecting mail from
the clerk's office when his legal assistant was out of town. (R.E.
#85, Jury Trial, 1/21/09 at TR 159). On May 8, 2008, as Ms.
Frasure was opening the letters, white powder sprinkled from one of
the envelopes. (R.E. #85, Jury Trial, 1/21/09 at TR 159). Ms.
Frasure identified which envelope contained the white powder, but

-9-

did not continue opening the envelope. (R.E. #85, Jury Trial, 1/21/09 at TR 159). The envelope, addressed to Judge Breen also included the sender's name, Marshall Williams, and other identifying features, namely, a return address, two website addresses and some acronyms. (R.E. #85, Jury Trial, 1/21/09 at TR 159).

The letter inside the envelope contained a warning that the powdery substance was indeed anthrax. (R.E. #91, Jury Trial, 1/22/09, Exhibit 3). Precisely, the hand-written letter warned:

<u>ATTENTION</u>

You have just been exposed to one gram of powerful crystal

<u>ANTHRAX</u>

Do Not Breath Spores!!!

Wash Hands Immediately!

➜ <u>Clear the Building Immediately!  Do Not Panic, Stay Calm!</u>

----------------------------------------------------------------

See:

<u>www.myspace.com/Marshall196</u>

<u>www.FreeMySon.net</u>

Thank you.

[signed] Marshall Williams

(R.E. #91, Jury Trial, 1/22/09, Exhibit No. 3) (emphasis in original).

After discovering the white powder, Ms. Frasure contacted the United States Marshal's Office. (R.E. #85, Jury Trial, 1/21/09 at TR 160). Once contacted, the Marshal's Office began the process of securing the building and its occupants. (R.E. #85, Jury Trial, 1/21/09 at TR 160). They blocked off the entrances, alerted the fire department and quarantined Ms. Frasure. (R.E. #85, Jury Trial, 1/21/09 at TR 160). The Firefighters checked Ms. Frasure's health and examined the white powder. (R.E. #85, Jury Trial, 1/21/09 at TR 161).

Ms. Frasure identified at trial the envelope that contained the white powder, stating expressly that she remembered the website addresses, www.myspace.com/marshall962 and www.freemyson.net that were written on the envelope. (R.E. #85, Jury Trial, 1/21/09 at TR 163). The envelope was admitted into evidence without objection. (R.E. #85, Jury Trial, 1/21/09 at TR 163).

On cross-examination, the Defendant questioned Ms. Frasure about the website addresses and other words and abbreviations written on the envelope. Specifically, the letters "FIJA" were written on the envelope. (R.E. #85, Jury Trial, 1/21/09 at TR 166). Ms. Frasure admitted she had no familiarity with the term "FIJA." (R.E. #85, Jury Trial, 1/21/09 at TR 167). The Defendant, having knowledge of the meaning of those letters and websites, attempted to inform Ms. Frasure and others that the term means

-11-

"Fully Informed Jury Instructions." (R.E. #85, Jury Trial, 1/21/09 at TR 167).

Deputy United States Marshal Christopher Crozier ("Deputy Crozier") testified on behalf of the government. (R.E. #85, Jury Trial, 1/21/09 at TR 174). In addition to his typical duties as a Deputy U.S. Marshal, Deputy Crozier also serves as a threat investigator. (R.E. #85, Jury Trial, 1/21/09 at TR 175). Deputy Crozier testified that he initiated the investigation into the threatening letter Ms. Frasure received. (R.E. #85, Jury Trial, 1/21/09 at TR 176).

Deputy Crozier learned from Ms. Frasure that the envelope containing the white powder looked like "inmate mail" that came from FCI Memphis. (R.E. #85, Jury Trial, 1/21/09 at TR 177). The envelope bore the name Marshall Williams. (R.E. #85, Jury Trial, 1/21/09 at TR 177). Deputy Crozier began the process of securing the federal building and ensuring that the threat of anthrax exposure did not spread to others. (R.E. #85, Jury Trial, 1/21/09 at TR 175).

Deputy Crozier also learned from Ms. Frasure that the letter appeared to look like inmate mail but it came from FCI Memphis and had the name "Marshall Williams" on it. Deputy Crozier contacted assistant Warden Gonzales to determine if there was an inmate by the name of Marshall Williams being held at that facility. (R.E. #85, Jury Trial, 1/21/09 at TR 175).

The envelope and letter that lead to the investigation was admitted as evidence during trial, without objection. (R.E. #85, Jury Trial, 1/21/09 at TR 163, 179, Exhibit No. 1, 3). Deputy Crozier explained that other court officials received letters from the Defendant; although those letters did not contain an anthrax threat or any substances. (R.E. #85, Jury Trial, 1/21/09 at TR 185). All of the letters the Defendant sent from FCI Memphis to area officials were collected and sent to the FBI for document examination. (R.E. #85, Jury Trial, 1/21/09 at TR 185-87).

Deputy Crozier spoke with the Defendant after recovering the letter and envelope. The Defendant signed a rights of waiver form and spoke with law enforcement. Deputy Crozier further testified that the Defendant admitted his culpability regarding the mailing of the anthrax letters in open court. (R.E. #85, Jury Trial, 1/21/09 at TR 187).

Postal Inspector Thomas Terry ("Inspector Terry") testified that the threatening letter sent by the Defendant actually traveled through the United States postal service. (R.E. #85, Jury Trial, 1/21/09 at TR 240).

Gregg Mokrzycki ("Mr. Mokrzycki") is a certified forensic document examiner with the FBI. Mr. Mokrzycki conducts handwriting and typewriting examinations and printed document reconstruction. (R.E. #91, Jury Trial, 1/22/09 at TR 295). Mr. Mokrzycki was given a number of documents to compare. (R.E. #91, Jury Trial, 1/22/09

-13-

at TR 297-98).   As an expert, Mr. Mokrzycki, testified that the handwriting on each of the documents were an ideal match. (R.E. #91, Jury Trial, 1/22/09 at TR 307).   Mr. Mokrzycki stated that based on a number of consistent handwriting characteristics, he was "able to determine that [the Defendant], the purported known writer of government's exhibits six, seven and eight also prepared a majority of the known writing on government's Exhibit 3." (R.E. #91, Jury Trial, 1/22/09 at TR 307).   Mr. Mokrzycki was also able to testify, using his expertise, that the self-adhesive stamps that were placed on Exhibits 1 and 6 alleged to be mailed by the Defendant, came from a contiguous role of stamps. (R.E. #91, Jury Trial, 1/22/09 at TR 312).

Agent Frank M. Dixon, Jr. ("Agent Dixon") testified that he participated in the investigation surrounding the Defendant's mailings.   He identified the Defendant at trial. (R.E. #91, Jury Trial, 1/22/09 at TR 352).

The Defendant's confessions and admissions

It was uncontested at trial that the Defendant mailed the threatening letter and that the letter was sealed in an envelope that included a powder substance purporting to be deadly anthrax. (R.E. #91, Jury Trial, 1/22/09 at TR 371, 400; R.E. #97, Jury Trial, 1/23/09 at TR 470).   The Defendant admitted in his own testimony, in his closing argument and in an admitted jail phone call that he indeed mailed an anthrax letter to Judge Breen.

-14-

On May 8, 2008, the Defendant made a phone call from prison. The phone call was recorded. Phillip Wayne Roberts (Agent Roberts) is a special investigative agent with the Federal Bureau of Prisons. (R.E. #91, Jury Trial, 1/22/09 at TR 273). At the time of the events alleged, Agent Roberts was working at FCI Memphis investigating whether inmates or prison employees were engaged in misconduct or illegal activity. After being contacted by the FBI, Agent Roberts obtained phone calls from the Defendant to individuals outside the facility. Specifically, on May 8, 2008, the Defendant made a phone call from FCI Memphis. The Defendant confessed during that phone call that he "mailed fake anthrax to the courthouse" earlier that week. (R.E. #91, Jury Trial, 1/22/09 at TR 276; Exhibit 11). The phone call was admitted into evidence, without objection. (R.E. #91, Jury Trial, 1/22/09 at TR 276; Exhibit 11).

At the conclusion of the government's proof, the Defendant did not move to dismiss for lack of evidence, even when expressly asked. (R.E. #91, Jury Trial, 1/22/09 at TR 360). The only proof offered by the Defendant was his own testimony. (R.E. #91, Jury Trial, 1/22/09 at TR 360). On cross-examination, the following exchange took place:

The United States:

    Q.   Mr. Williams, let's just get down to it, you
         knowingly mailed this letter to the chambers of
         Judge Breen, didn't you?
    A.   With the intent to get help, sir, yes, sir.

-15-

```
Q.    So you're admitting to this jury you knowingly and
      willfully mailed that letter with fake anthrax in
      it to Judge Breen?
A.    Under the Sixth Circuit law they have to find me
      innocent, sir if I mailed it - -
Q.    Answer the question, sir.
A.    I did, I said yes.
```

(R.E. #97, Jury Trial 1/23/09, at TR 400).

On January 23, 2009, the jury returned a unanimous verdict of guilty to Count One of the indictment. (R.E. #98, Jury Verdict, 1/23/09).

<u>The Sentencing Hearing</u>

A sentencing hearing in this matter was set on February 24, 2009. At that hearing, the U.S. Marshal's Service informed the district court of threats levied by the Defendant in reference to the Defendant's appearance at the Sentencing Hearing. The Defendant's appointed elbow counsel was present on behalf of the Defendant.

Chief Deputy Marshal Eddie Lassiter ("Deputy Lassiter") informed the district court that the Defendant was "extremely uncooperative, combative, and . . . would be a danger to himself or others, including the security of our deputy marshals and of this court." (R.E. #105, Sentencing Hearing, 2/24/09 at TR 9). Deputy Lassiter also informed the parities that the Defendant attempted to flee after making a misconduct allegation against a correctional officer. (R.E. #105, Sentencing Hearing, 2/24/09 at TR 9). According to Deputy Lassiter, the Defendant fled his cell into an

-16-

open area within the prison and had to be physically restrained.
(R.E. #105, Sentencing Hearing, 2/24/09 at TR 9).  The Bureau of
Prisons further discovered that Mr. Williams had explicitly
threatened to cause a disturbance at his next court appearance,
claiming that he would not come or leave quietly from his next
court appearance.  (R.E. #105, Sentencing Hearing, 2/24/09 at TR
11).

The district court inquired what methods could be employed to
assure that the Defendant was physically present in the courtroom.
(R.E. #105, Sentencing Hearing, 2/24/09 at TR 10).  Deputy Lassiter
explained that the Marshal's Office would "request, first of all,
full restraints.  And we would also have to bring in at least,
normally we would have two [officers] with one in-custody prisoner,
but we would at least have three if not four."  (R.E. #105,
Sentencing Hearing, 2/24/09 at TR 10).

Upon hearing of the behavior, actions and threats made by the
Defendant, the district court determined to have the Defendant
present via video conferencing.  (R.E. #105, Sentencing Hearing,
2/24/09 at TR 8).  The Defendant, through "elbow counsel" did not
object.  (R.E. #105, Sentencing Hearing, 2/24/09 at TR 11).  The
Sentencing hearing was delayed by three days in order to set up
video-conferencing equipment.

The sentencing hearing was held on February 27, 2009.  The
Defendant appeared by video and was restrained.  (R.E. #109,

-17-

Sentencing Hearing, 2/27/09 at TR 5).  The district court sentenced the Defendant to 60 months imprisonment, to run consecutive to the Defendant's prior sentence, a sentence within the range set forth by the Sentencing Guidelines.  (R.E. #109, Sentencing Hearing, 2/27/09 at TR 24).  The district court further sentenced the Defendant to a three year term of supervised release.  (R.E. #109, Sentencing Hearing, 2/27/09 at TR 24).

### III.

### SUMMARY OF ARGUMENT

The Defendant, in his initial brief, filed on July 13, 2009, raises six issues on appeal.  On December 7, 2009, the Defendant filed a supplemental, *pro se* brief in which he alleges 15 assignments of error.[1]  In the Defendant's initial brief he first contends that he did not knowingly and voluntarily waive his constitutional right to be represented by counsel.  Contrary to the Defendant's assertions, the district court engaged in a colloquy with the Defendant that complied fully with this Circuit's requirements as set forth in *United States v. McDowell,* 814 F.2d 245 (6th Cir. 1987).

---

1. This Court is not obligated to address a defendant's *pro se* arguments when the defendant is represented by counsel in the matter.  *United States v. Martinez,* 588 F.3d 301, 328 (6th Cir. 2009); *United States v. Howton,* 260 Fed. Appx. 813, 819 (6th Cir. January 16, 2008) (unpublished).  Nonetheless, the United States offers its responses to the Defendant's *pro se* arguments, to the extent those arguments are not addressed in the Defendant's initial brief.

-18-

Second, the Defendant argues that the district court compelled him to wear his prison uniform at trial. This argument fails however, because the district court expressly permitted the Defendant to wear clothing other than his prison uniform but declined to provide the Defendant with a clothing budget. Moreover, even if the district court erred in not providing the Defendant with a clothing budget, any error was harmless as the evidence against the Defendant was overwhelming.

The Defendant further alleges that there was insufficient evidence for the jury to find him guilty beyond a reasonable doubt. Contrary to the Defendant's contention, there was overwhelming direct and circumstantial evidence to support his convictions, including a handwriting analysis expert, the Defendant's own confessions in open court and admissions the Defendant made in a taped phone call. The Defendant's fourth assignment of error alleges that the district court should have included the Defendant's proposed instruction to the jury regarding the *mens rea* of the intent element of the offense charged. This argument fails because the district court was within its discretion to deny the instruction on the grounds that the Defendant's proposed instruction contradicted Sixth Circuit precedent.

The Defendant also complains that the district court erred when it sentenced the Defendant without first consulting a Presentence Report ("PSR"). This argument is without merit because

-19-

the district court is within its discretion to proceed without a Presentence Report, if the court feels that it has the facts before it to make a sentencing determination. Furthermore, the Defendant agreed that a PSR was unnecessary.

The Defendant's sixth assignment of error alleges that the district court erred when it conducted the sentencing hearing by video conferencing. The district court, however, is entitled to protect the integrity and safety of its courtroom and procedures and was left with no other option as a direct result of the Defendant's behavior. Moreover, the Defendant did not object to proceeding by video conferencing.

In his *pro se* supplemental brief, the Defendant further alleges a number of arguments that are unsupported by the record. In addition to reiterating the issues raised in the Defendant's principal brief, the Defendant further alleges that he was improperly removed from the courtroom. The Defendant's complaint fails, however, because the district court properly warned the Defendant of the consequences of his persistent misconduct. Moreover the Defendant failed to show any way in which he was prejudiced by his removal.

The Defendant further alleges that the district court judge should have recused herself from the case. The Defendant alleges only that there is a professional relationship between the district court judge and the judge named in the threatening communication.

-20-

A professional or even friendly relationship with a fellow judge is not grounds for recusal and the Defendant's claim must fail.

The Defendant's next *pro se* allegation contends that the district court's decision not to issue 18 subpoenas requested by the Defendant deprived him of the ability to put on a defense. The Defendant's argument fails, however, because he did not meet the required standard of demonstrating that the requested witnesses would be necessary for a meaningful and relevant defense. Likewise, the Defendant argues that he should have been appointed an investigator. This argument also fails because the Defendant did not demonstrate that an investigator would have assisted him in defending against the crime charged.

The Defendant also alleges that the prosecutor on his case misstated the law. The record, however, does not support the Defendant's allegation. This contention is also meritless. The Defendant also claimed that he was sentenced "off record" to a term of supervision that exceeds the statutory maximum. This allegation is also completely unsupported by the record and must fail.

The Defendant further argues that he received ineffective assistance of counsel. This complaint too must fail because the Defendant represented himself at trial and because the record is incomplete on this issue.

The Defendant's final argument is that "cumulative errors" prevented him from a fair trial. The Defendant's argument fails,

however, first because the Defendant has failed to show that any errors actually occurred.    Second, if there were errors, the Defendant has not demonstrated that he was prejudiced in any way, or that the outcome of his case would have been different.

## IV.

### ARGUMENT

1. **THE DEFENDANT KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHT TO COUNSEL AFTER ENGAGING IN A LENGTHY INQUIRY WITH THE TRIAL COURT.**

In his first assignment of error, the Defendant contends that he did not knowingly and voluntarily waive his right to counsel. Specifically, the Defendant claims that the district court failed to conduct a lengthy and searching inquiry to determine whether he understood his right to counsel and the gravity of his decision to represent himself.    This claim is without merit because the record reflects that the district court engaged in a lengthy inquiry that satisfies the requirements that this Circuit set forth.

Because no objection was made regarding the trial court's decision to allow the Defendant to proceed *pro se,* this Court reviews the district court's determination only for plain error. *United States v. Herrera-Martinez,* 985 F.2d 298, 301 (6th Cir. 1993).    Plain error is an error that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Herrera-Martinez,* 985 F.2d at 301 (quoting *United States v. Young,* 470 U.S. 1, 15 (1985)).

-22-

The Sixth Amendment gives criminal defendants both the right to counsel and, as established by the United States Supreme Court, the right to proceed <u>without</u> counsel. *Faretta v. California,* 422 U.S. 806 (1975) (emphasis added). If a criminal defendant chooses to exercise his constitutional right to proceed without counsel, he must knowingly and voluntarily waive the benefits afforded by the right to counsel. *Faretta,* 422 U.S. at 835. For a defendant to knowingly and voluntarily waive the right to counsel, he must be "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279 (1942)).

To ensure that the waiver is made intelligently and knowingly with full awareness of its consequences, this Court, in *United States v. McDowell,* 814 F.2d 245 (6th Cir. 1987), identified "the nature of the inquiry to be made and the procedure to be followed henceforth where an accused seeks to waive representation and proceed *pro se*." *McDowell,* 814 F.2d at 250. This Court instructed trial courts as follows:

> [W]henever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself.

*McDowell,* 814 F.2d at 250-51.  The model inquiry addresses, *inter alia*, a defendant's knowledge of the law, his previous experience proceeding *pro se*, the potential penalties for the charged crimes, and the defendant's familiarity with the rules of evidence. *McDowell,* 814 F.2d at 251-52.  While *McDowell* set forth a guide for district judges, the trial court need not literally adhere to the stated inquiry; it need only substantially comply with the guidelines. *United States v. Miller,* 910 F.2d 1321, 1324 (6th Cir. 1990); *McDowell,* 814 F.2d at 250.

An important element of determining whether a defendant knowingly and intelligently waives his right to appointed counsel is the extent of the defendant's education. *McDowell,* 814 F.2d at 252 (J. Engel, concurring).  As Judge Engel noted, "[t]he more searching the inquiry at this stage the more likely it is that any decision on the part of the defendant is going to be truly and voluntary and equally important that he will not be able to raise that issue later if he does decide to represent himself." *McDowell,* 814 F.2d at 252.

The record in the instant case amply demonstrates that the district court adhered substantially to the model inquiry set forth in *McDowell.*  On January 6, 2009, a hearing was held to address the Defendant's request to proceed without counsel and defense counsel's request to withdraw.  The colloquy between the trial court and the Defendant covered topics such as the Defendant's

-24-

education and legal experience, the consequences of self-representation. The district court further advised the Defendant of the charges against him and cautioned the Defendant repeatedly of the dangers of self-representation. (R.E. #47, Report Date, 1/6/09 at TR 25).

Specifically, the district court learned that the Defendant claims to have a number of self-taught degrees, including a Juris Doctorate and master's degrees in business and religion. (R.E. #47, Report Date, 1/6/09 at TR 20-22). The Defendant stated further that he considered himself a specialist in the legal area of "federal jurisdiction, habeas corpus." (R.E. #47, Report Date, 1/6/09 at TR 22). The Defendant also testified that he had an understanding of the Federal Rules of Evidence and was confident he could make and respond to objections on his behalf. (R.E. #47, Report Date, 1/6/09 at TR 24).

After questioning the Defendant on his ability to represent himself and the Defendant's understanding of the legal process, the district court engaged in further inquiry regarding the dangers of self representation. The exchange between the Defendant and the trial court proceeded as follows:

> Q.   You understand that if you opt for self-representation the court can in no way assist you in that representation?
> A.   Yes, ma'am.
> Q.   You further understand that you will be found bound by the same rules that an attorney and that the United States Attorney would be bound by?
> A.   Yes, ma'am.

Q.    Okay.  And those rules include the evidentiary rules which determine things like relevance and probativity, do you understand that?

A.    Yes, ma'am.  401 and 402 Federal Rules of Evidence, is that correct?

Q.    Okay.  I see you have been reading the rules.  But I just want to remind you that you will be governed by those.

A.    I just want to make sure that the government is governed by the rules.

Q.    They will certainly be governed by the rules, also. I need— to go further, Mr. Williams, and advise you that a person who opts for self-representation is not entitled to the battery of resources that [appointed] counsel would be entitled to on your behalf?

A.    Yes, ma'am.

Q.    So when you opt for self-representation, for example, if there were a need to conduct investigations - -

A.    Yes, ma'am.

Q.    – Attorney would be able to make motions on your behalf - -

A.    Yes, ma'am.

Q.    Because he's appointed by the court to represent you.  A person who is self-represented is not entitled to those same resources, . .. I have to tell you that that is something that might be a consequence that you need to consider when you opt for self-representation.

A.    Yes, ma'am.

(R.E. #47, Report Date, 1/6/09 at TR 24-26).

The district court further inquired as to the Defendant's reasons for wishing to proceed *pro se*.  (R.E. #47, Report Date, 1/6/09 at TR 23).  The Defendant and appointed counsel disagreed about strategy  and about motions that the Defendant wished to file.  (R.E. #47, Report Date, 1/6/09 at TR 23-24).  Finally, after granting the Defendant's request to proceed *pro se*, the district court adhered to a final advisement of *McDowell* and appointed

-26-

standby counsel to provide consultation as needed. (R.E. #47, Report Date, 1/6/09 at TR 30).

The district court adequately informed the Defendant of the dangers of proceeding without counsel in substantial compliance to the model inquiry set forth in *McDowell.* Where the district court addresses the issues set forth by the model inquiry, there is no merit in a challenge to the waiver. *Miller,* 910 F.2d 1324-25.

As noted by the district court, the Defendant was sufficiently intelligent and proficient in legal proceedings to understand the dangers of self-representation. (R.E. #47, Report Date, 1/6/09 at TR 22-24). The district court also analyzed the Defendant's reasons for desiring to represent himself and further protected the Defendant by appointing elbow counsel. (R.E. #47, Report Date, 1/6/09 at TR 22-26). Under these circumstances, there is no merit in the Defendant's contention that his waiver of counsel was not knowing and voluntary. Consequently, the district court did not plainly err in allowing the Defendant to proceed *pro se.*

**2.    THE DISTRICT COURT ACTED PROPERLY WHEN IT PERMITTED THE DEFENDANT TO WEAR NON-PRISON CLOTHING AT TRIAL, BUT DECLINED TO PROVIDE THE DEFENDANT WITH A BUDGET TO PURCHASE CLOTHING.**

The Sixth Circuit will review the issue of the defendant's wearing prison clothing under a harmless error analysis if the defendant preserves the issue by making a timely objection. *Chapman v. California,* 386 U.S. 18, 24 (1967). If an objection is made, the reviewing court should consider whether allowing the

defendant to proceed in his jail uniform is harmless because of the weight of the evidence against the defendant. *Chapman,* 386 U.S. at 24.

The Supreme Court has found that a criminal defendant "'should not be <u>compelled</u> to go to trial in prison or jail clothing because of the possible impairment' of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial." *United States v. Waldon,* 206 F.3d 597, 607 (6th Cir. 2000) (quoting *Estelle v. Williams,* 425 U.S. 501, 504 (1976)) (emphasis added). The Sixth Circuit has further elaborated that "the only constitutional prohibition is that a defendant cannot be *forced* to wear prison clothes and, even then, he must object to that directive to preserve his claim." *United States v. Brown,* 367 F.3d 549, 554 (6th Cir. 2004).

There is no constitutional right to be tried in civilian clothes, particularly in civilian clothes of one's own choosing. *E.g., United States v. Rogers,* 769 F.2d 1418, 1423 (9th Cir. 1985); *United States v. Dawson*, 563 F.2d 149, 152 (5th Cir. 1977). The Supreme Court's holding in *Estelle* explains that as long as the district court is able to determine that the exposure of the defendant in jail clothes was not so inherently prejudicial, there should be no impairment with the fairness of the trial. *Estelle* 425 U.S. at 504.

Even if an error is found, and proper objection was made, a conviction will not be reversed if the error was harmless. *See Chapman v. California,* 386 U.S. 18, 24 (1967) (holding that a constitutional error is harmless if it can be shown beyond a reasonable doubt that the error did not contribute to the verdict). Harmless error analysis applies especially where there is overwhelming evidence of guilt. *Whitman v. Bartow,* 434 F.3d 968, 971 (7th Cir. 2006). Thus, any violation of a defendant's due process rights arising out of a requirement that the defendant appear before the jury in a prison uniform is harmless, where there is overwhelming evidence of his guilt. *Whitman*, 434 F.3d at 971.

In this case, no error occurred. This Circuit has made it clear that simply because a defendant wears prison attire during trial does not mean that his constitutional right to a fair trial was compromised. *Brown,* 367 F.3d at 554. The record reflects that the district court supported the Defendant in his desire to wear more suitable clothing.

The Defendant requested funding from the district court on the day of trial in order to buy more suitable clothing. (R.E. #85, Jury Trial, 1/21/09 at TR 16). The district court considered the Defendant's request for a "clothing budget." The district court stated expressly that the Defendant could wear clothing of his choice, but the district court would not order a clothing budget. (R.E. #85, Jury Trial, 1/21/09 at TR 15-16). The Defendant

-29-

objected to this again stating that he would be forced to proceed in jail clothes.  (R.E. #85, Jury Trial, 1/21/09 at TR 16).

Based on these facts, the district court never compelled the Defendant to proceed in prison clothes; the Defendant had available options and was told in no uncertain terms that he could wear civilian clothes and would be encouraged to do so.  The Defendant declined to follow the suggestion of the court, merely preserving his objection to the district court's decision not to provide the Defendant with a budget for clothes.

Even if the facts were different, moreover, and the district court had compelled the defendant to wear prison clothing, the error would be harmless in light of the overwhelming evidence of the defendant's guilt.  The Defendant admitted during cross-examination and during his closing argument that he mailed the communication at issue to Judge Breen.  The Defendant also confessed in a phone call from jail that he mailed an anthrax letter to Judge Breen.  That phone call was admitted into evidence. Because the Defendant admitted committing the offense and because of the overwhelming evidence provided at trial, any error in having the Defendant appear in jail clothes is harmless.

**3.   THE EVIDENCE PRESENTED AT TRIAL, VIEWED IN THE LIGHT MOST FAVORABLE TO THE UNITED STATES, WAS MORE THAN SUFFICIENT TO CONVICT THE DEFENDANT.**

In his third assignment of error, the Defendant contends that the evidence was insufficient to prove beyond a reasonable doubt

-30-

that he mailed a threatening communication to a federal judge on May 8, 2008. The Defendant insists that the government failed to prove that the letter the Defendant sent to Judge Breen constituted a threat. The Defendant's argument fails, however, because the letter Defendant mailed falls squarely within this Court's definition of a threatening communication.

On appeal, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). All of the evidence, whether direct or circumstantial, must be viewed in the light most favorable to the government. *United States v. Seltzer,* 794 F.2d 1114, 1119 (6th Cir. 1986). The ultimate decision about whether the evidence is sufficient to find a verdict of guilty is left up to the jury. *United States v. M/G Transport Servs., Inc.,* 173 F.3d 584, 588-89 (6th Cir. 1999).

A sufficiency of the evidence claim, typically, is reviewed *de novo. United States v. Carson,* 560 F.3d 566, 579 (6th Cir. 2009). In order for a defendant to successfully prevail on this kind of claim, a defendant must still meet a heavy burden. *Carson,* 560 F.3d at 580. A defendant is burdened with proving "that the government failed to prove beyond a reasonable doubt that he

committed the elements of the crimes for which he was charged."
*United States v. Tally,* 164 F.3d 989, 996 (6th Cir. 1999).

The defendant must move for an acquittal in district court in
order to appeal on the basis of insufficiency of the evidence.
*McBride,* 362 F.3d at 368. If the defendant does not do this, then
the standard will be one of "manifest miscarriage of justice."
*McBride,* 362 F.3d at 369. In order for the defendant to get
reversal, then the Sixth Circuit would have to find the record
"devoid of evidence pointing to guilt." *McBride,* 362 F.3d at 369
(quoting *United States v. Carnes,* 309 F.3d 950, 956 (6th Cir.
2002)).

Here, the Defendant was convicted of violating 18 U.S.C. §
876(c) which prohibits mailing a threatening communication to a
federal judge through the United States mail. To convict a
defendant of violating 18 U.S.C. § 876(c) the prosecution must show
the following elements beyond a reasonable doubt:

> 1. The defendant mailed (or caused to be
>    delivered by the Postal Service according to
>    the directions thereon) a communication
>    addressed to any other person and containing a
>    threat to kidnap or to injure a person;
>
> 2. The defendant acted knowingly and willfully;
>
> 3. The recipient was a United States judge.

*See* 18 U.S.C. § 876(c).

In this appeal, the Defendant argues only that the United
States failed to prove that the mailing at issue constituted a

threat.    The Defendant's argument fails, however because the evidence at trial clearly demonstrated that the Defendant mailed a communication containing a substance purporting to be anthrax to a federal judge.  By the Defendant's own admissions, he mailed the communication to garner attention from the recipient.    The Defendant's letter falls squarely within this Court's analysis of what  constitutes a threatening communication.

This Court has analyzed whether 18 U.S.C. § 875 (prohibiting mailing a communication threatening to kidnap or injure the person of another, the companion statute to 18 U.S.C. § 876) requires general or specific intent.  This Circuit explained "although its language does not specifically contain a *mens rea* element, Section 875(c)is to be interpreted as requiring only general intent. Accordingly, Section 875(c) requires proof that a reasonable person would have taken the defendant's statement as a serious expression of an intention to inflict bodily harm." *United States v. Alkhabaz,* 104 F.3d 1492, 1494 (6th Cir. 1997).

The Sixth Circuit has also maintained that 18 U.S.C. § 876 simply requires:

> that the defendant have intended to make the statement
> found to be a threat . . . The test for whether a
> statement *is* a threat is an objective one; it is not what
> the defendant intended but whether the recipient could
> reasonably have regarded the defendant's statement as a
> threat . . . . A threat is not a state of mind in the
> threatener; it is an appearance to the victim.  The fact
> that the victim acts as if he believed the threat is
> evidence that he did believe it, and the fact that he

-33-

> believed it is evidence that it could reasonably be
> believed and therefore that it *is* a threat.

*United States v. Chick,* 955 F.2d 45, *2 (6th Cir. 1992) (table opinion) (citations omitted) (emphasis in original).

Defendant argues that there was insufficient evidence to establish that the communication at issue contained a threat. "In general, whether a communication constitutes a 'threat' within the purview of 18 U.S.C. § 876 is a question of fact for the jury so long as a reasonable recipient, familiar with the context of the communication, could interpret it as a threat." *United States v. Polson,* 154 F. Supp. 2d 1230, 1235 (S.D. Ohio 2001) (citing *United States v. Daughenbaugh,* 49 F.3d 171, 174 (5th Cir. 1995); *United States v. Malik,* 16 F.3d 45, 49 (2nd Cir. 1994); *United States v. Bellrichard,* 994 F.2d 1318, 1323-24 (8th Cir. 1993); *United States v. Taylor,* 972 F.2d 1247, 1251 (11th Cir. 1992); *United States v. Lincoln,* 589 F.2d 379, 381-82 (8th Cir. 1979)).

Importantly, this Circuit has found that a defendant's claim "that the government's proof failed to show that the indictment letter did not disclose any intent on the part of the writer to injure the person named therein, such proof was unnecessary since proof of violation of the statute does not require evidence of intent to injure." *United States v. Bass,* 239 F.2d 711, 716 (6th Cir. 1957). Thus, in order to prove that a defendant has mailed a threatening communication to a person, the United States is required only to prove that the defendant intended to mail the

-34-

letter, not that the defendant actually intended to injure the named individual. *Bass,* 239 F.2d at 716.

The Defendant in the case at bar did not move for a judgment of acquittal, even when the district court specifically asked him. (R.E. #97, Jury Trial, 1/23/09 at TR 360). Thus, his claim for insufficiency of the evidence will be considered under the "miscarriage of justice" standard. Under these standards, the Defendant's conviction must be affirmed.

The record in the case at hand is replete with uncontested evidence of the Defendant's guilt, including confessions the Defendant made in open court, in court filings and in taped telephone calls. Defendant freely admitted that he mailed the letter containing threats against a federal judge.

The Defendant admitted that he sent the following letter to Judge Breen:

<u>ANTHRAX</u>

Do Not Breath Spores!!!

Wash Hands Immediately!

➜  <u>Clear the Building Immediately!  Do Not Panic, Stay Calm!</u>

----------------------------------------------------------------

See:

<u>www.myspace.com/Marshall196</u>

<u>www.FreeMySon.net</u>

Thank you.

[signed] Marshall Williams

(R.E. #91, Jury Trial, 1/22/09 at Exhibit No. 3) (emphasis in original).    Ms. Frasure, Judge Breen's law clerk, testified that when she discovered the letter with the white powder, the whole experience was "nerve racking." (R.E. #91, Jury Trial, 1/22/09 at TR 161).  The United States also put on proof that the letter and the substance therein caused a chain of events designed to protect those who came in or might come in contact with the letter and its contents.   Indeed, as the evidence showed, the U.S. Marshal's Service, the Memphis Fire Department and the FBI all became involved in minimizing the perceived threat.   (R.E. #91, Jury Trial, 1/22/09 at TR 160, 175, 222).

Based on the evidence put forth by the United States demonstrating that the letter was treated as a threat and that it was received as a threat to the safety of Judge Breen, the United States met its burden of showing that the communication constituted a threat.   Thus, all three elements as to the single count of the indictment were established beyond any reasonable doubt. Accordingly, there was sufficient evidence presented to the jury to support the Defendant's convictions and the Defendant's third assignment of error must be rejected; there was no miscarriage of justice.  Under these standards, the Defendant's conviction must be affirmed.

**4.   THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY ON THE *MENS REA* FOR THE OFFENSE OF MAILING A THREATENING COMMUNICATION WHEN IT INSTRUCTED THE JURY THAT THE DEFENDANT HAS TO INTEND TO MAIL THE THREAT.**

The Defendant argues that the district court erred in declining to submit a jury instruction that included a specific intent instruction.   The Defendant's argument is unpersuasive, however, because this Circuit has found that the decision to give a jury instruction, and the content of that jury instruction are within the broad discretion of the trial court.  *United States v. English,* 925 F.2d 154, 158 (6th Cir. 1991).   The Sixth Circuit reviews a district court's decision to instruct the jury with regard to a requested jury instruction for an abuse of discretion. *Tompkin v. Phillip Morris US, Inc.* 362 F.3d 882, 901 (6th Cir. 2004).

A district court's refusal to give a requested jury instruction should only result in reversal "if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered instructions, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams,* 952 F.2d 1504, 1512 (6th Cir. 1991) (citation omitted) (finding no error where trial court refused to give defendant's requested instruction which was an incorrect statement of the law).

The Sixth Circuit has further explained that they will review jury instructions "in order to determine whether the instructions adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (quoting *King v. Ford Motor, Co.*, 209 F.3d 886, 897 (6th Cir. 2000)). An omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law. *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

The Sixth Circuit has explicitly rejected a specific intent requirement with respect to 18 U.S.C. 876(c) and has held that the statute only requires general intent. *Bass v. United States,* 239 F.2d 711 (6th Cir. 1957); *United States v. Shumaker,* 875 F.2d 868 (6th Cir. 1989) (unpublished). Intent is an element of the offense of mailing threatening letters. This Circuit has explained that "the element of intent may be inferred from the act of mailing." *United States v. Ring,* 513 F.2d 1001, 1003 (6th Cir. 1975).

The district court in this case instructed the jury as follows:

> For you to find the defendant Marshal Williams guilty of this crime, you must be convinced that the government has proved each of these elements beyond a reasonable doubt.
> First. That Mr. Williams Knowingly and willfully sent by U.S. mail or caused to be sent by U.S. Mail a communication addressed to the clerk of court, Judge Breen's court.

> Second that Mr. Williams knowingly and willfully included a threat to another person in that communication.
>
> A threat is a serious statement expressing an intention to injury any person which under the circumstances would cause apprehension in a reasonable person as distinguished from idle or careless talk, exaggeration or something said in a joking manner. It is not necessary for the government to prove that Mr. Williams intended to carry out a threat or to prove that Mr. Williams is capable of carrying out a threat. . . .
>
> The third element, that the person to whom Mr. Williams addressed this communication was an officer or employees of the United states government engaged in the performance of official duties.

(R.E. #97, Jury Trial, 01/23/09, at TR 458-59).  The district court's instruction was a correct and accurate statement of the law as set forth by the Sixth Circuit and therefore, the instruction should be upheld.

The Defendant argues that he was entitled to a jury instruction specifying that the Defendant had to intend to threaten the recipient.  The Defendant's argument is without merit because, as outlined in the foregoing argument, the Defendant is not entitled to such an instruction.  The district court's instructions to the jury were correct and accurate statements of this Circuit's precedence.  The Defendant requested a jury instruction based on an inaccurate interpretation of the law and therefore, the district court acted well within its discretion in declining to include the Defendant's proposed instruction.

**5.    THE DISTRICT COURT WAS ENTITLED TO PROCEED WITHOUT A PRESENTENCE REPORT WHEN IT DETERMINED THAT THE COURT HAD THE NECESSARY FACTS BEFORE IT TO SENTENCE THE DEFENDANT.**

Defendant complains on appeal that the district court should not have sentenced him without a presentence report. The Defendant's claim has no merit, however, because a presentence report is unnecessary if the sentencing court finds sufficient information in the record "to enable the meaningful exercise of sentencing discretion" and the court explains its finding on the record. Fed. R. Crim. P. 32(c)(1)(A)(ii). In this case, the Defendant agreed that the preparation of the presentence report was unnecessary and the district court determined it had the requisite facts in front of it to sentence the Defendant.

The Sixth Circuit utilizes the abuse of discretion standard of review for sentencing determinations. *United States v. Brown,* 557 F.3d 297, 299 (6th Cir. 2009). This Court reviews sentencing determinations for "procedural and substantive reasonableness." *Brown,* 557 F.3d at 299. Whether a sentence is procedurally unreasonable depends on whether "it is marked by 'significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 3553 (a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.'" *Brown,* 557 F.3d at 299 (quoting *United States v. Gall,* 128 S.Ct. 586, 597 (2007)). A substantively unreasonable sentence occurs "'when the district

-40-

court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent 3553 (a) factors or gives an unreasonable amount of weight to any pertinent factor.'" *Brown,* 557 F.3d at 299 (quoting *United States v. Broho,* 485 F.3d 904, 908 (6th Cir. 2007)).

The Defendant argues that the district court's failure to consult a pre-sentence report in his case resulted in a procedural error, but does not argue that the Defendant's sentence was unreasonable. (Appellant's Brief, pg. 52-54). The Defendant's argument is without merit because the district court was within its discretion to decline consultation of a presentence report.

A presentence report is not mandatory as long as the district court complies with the requirements of the Sentencing Guidelines and the Federal Rules of Criminal Procedure and "has those facts in front of [the court]." *Brown,* 557 F.3d at 300; *accord Howard v. Maggio,* 540 F.2d 1280, 1282 (5th Cir. 1976); *Hazelwood v. Arnold,* 539 F.2d 1031, 1033 (4th Cir. 1976); *Roddy v. United States,* 296 F.2d 9, 11 (10th Cir. 1961). A district court has discretion to determine whether a  presentence report would assist the court in makings its sentencing determination. *Brown,* 557 F.3d at 300. The defendant in *Brown* appealed on the basis that the district court's failure to consult a presentence report was procedural error. *Brown,* 557 F.3d at 299. The Sixth Circuit, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii) and the United States

-41-

Sentencing Guidelines § 6A1.1(a)(2), found that a defendant may be sentenced without a presentence report "[i]f the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record." *Brown*, 557 F.3d at 300. Furthermore, this Circuit found that "[t]o the extent the district court treated [the defendant's] preference as controlling, it was within its discretion to do so, and this was in no way inconsistent with the Sentencing Guidelines." *Brown,* 557 F.3d at 300.

The district court did not rely on Defendant's waiver to sentence the Defendant without awaiting a presentence report. The court instead found that it had sufficient information to sentence the Defendant pursuant to 18 U.S.C. § 3553. It is further clear from the record that the district court had sufficient information in front of it to make its sentencing determination.

**6.    THE DISTRICT COURT'S DECISION TO PROCEED WITH THE SENTENCING HEARING VIA VIDEO CONFERENCING WAS PROPER BECAUSE THE DEFENDANT'S OWN THREATENING ACTIONS LEFT THE COURT WITH NO OTHER OPTION.**

The Defendant contends that his absence from the courtroom during sentencing violated Rule 43 of the Federal Rules of Criminal Procedure and that he should have been physically present in the courtroom despite his threatening behavior.

Federal Rule of Criminal Procedure 43(a) governs when the defendant's presence is required. Rule 43(a) reads, as follows:

-42-

(a) When Required.  Unless this rule, Rule 6, or Rule 10
provides otherwise, the defendant must be present at:
    (1) the initial appearance, the initial arraignment,
and the plea;
    (2) every trial stage, including jury impanelment
and the return of the verdict; and
    (3) sentencing.

Fed. R. Crim. Pro. 43(a).  A failure to be present at sentencing

can be harmless error.  *United States v. Jones,* 381 F.3d 114, 122

(2d Cir. 2004); *United States v. Evans,* 352 F.3d 65, 68-69 (2d Cir.

2003) (finding Rule 43 error harmless).

This narrow issue is one of first impression in this Circuit.

The Fourth Circuit, however, has addressed this issue squarely in

*United States v. Lawrence.*  The Fourth Circuit explained that

"[t]he right to be present under Fed. R. Crim. P. 43, . . . is not

absolute.  The rule offers certain limited exceptions to the

general requirement of physical presence."  *United States v.*

*Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001).  Despite this reading

of Rule 43, however, the Fourth Circuit found that a defendant's

persistently unruly behavior did not allow the district court to

conduct a video conferencing sentencing hearing.

The procedure used by the district court for conducting this

sentencing via video conference meets a substantial judicial

interest, benefits the public and the defendants.  The Defendant in

the instant case engaged in behavior that was not just unruly-it

was threatening.  The Defendant, having been convicted of mailing

a threatening communication, levied a threat against the U.S.

-43-

Marshal's Office and the district court that he would not come or go quietly at his sentencing hearing.  This threat followed a dangerous attempt by the Defendant to flee from his jail cell.

By using the video conferencing procedure, all of the requirements of Rules 32 and 43 of the Federal Rules of Criminal Procedure were satisfied during the Defendant's sentencing.  The parties were able to see one another clearly and to hear each other.  The district court personally addressed the Defendant and the Defendant was able to address the district court.  The district court heard arguments and asked the Defendant if he had anything to say on his own behalf.  In light of the video technology used by the district court, Defendant was virtually "present" at the sentencing.

Even if the district court erred in conducting the sentencing hearing via video conferencing, this Court should find that any error was harmless.  The Defendant has not argued that the sentence he received was unreasonable or improper, or that the outcome would have been different if the Defendant were physically present.  Thus, the Defendant has failed to show that he was prejudiced by the district court's procedure.

**7.  THE DEFENDANT'S *PRO SE* COMPLAINTS NOT RAISED BY DEFENDANT'S INITIAL BRIEF ARE UNFOUNDED AND HAVE NO SUPPORT IN THE RECORD.**

A.  <u>The district court warned the defendant that his conduct was inappropriate before removing him from the courtroom during the rebuttal closing argument of the United States.</u>

-44-

A defendant's right to be physically present during each stage of trial is protected by the Due Process Clause and the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen,* 397 U.S. 337, 338 (1970). This right is not absolute and can be taken away, especially when a defendant "engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial." *Allen,* 397 at 338.

A defendant loses the right be present at trial if, "'after he has been warned by the judge that he will be removed if he continues his disruptive behavior . . . once lost, the right to be present can of course be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.'" *Gray v. Moore,* 520 F.3d 616, 622-23 (6th Cir. 2008) (quoting *Illinois v. Allen,* 397 U.S. 337, 343 (1970)).

In the case at bar, the Defendant engaged in disruptive speech and conduct during the rebuttal argument of the United States. (R.E. #97, Jury Trial, 1/23/09 at TR 485-86). The Defendant refused to abide by the directions and orders of the district court judge. (R.E. #97, Jury Trial, 1/23/09 at TR 485). Specifically, the Defendant vehemently objected to a statement made by the United States. (R.E. #97, Jury Trial, 1/23/09 at TR 386). Upon the Defendant's making the offensive statement, the district court

-45-

warned the Defendant of the consequences of disruptive and disorderly behavior prior to being escorted out of the courtroom. (R.E. #97, Jury Trial, 1/23/09 at TR).  The district court also instructed the jury to remain neutral and unbiased despite the Defendant's offensive behavior.  (R.E. #97, Jury Trial, 1/23/09 at TR 492).

The Defendant has also not shown that his removal resulted in any prejudice or had any influence in determining the verdict. Consequently, even if the district court did err, such error was harmless as there was overwhelming evidence of the Defendant's guilt.

B.   <u>There was no basis for the trial judge to recuse herself.</u>

A judge is required to recuse herself "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455.  A judge's decision not to recuse herself is reviewed for abuse of discretion. *See, e.g., Youn v. Track, Inc.,* 324 F.3d 409, 422 (6th Cir. 2003).  Reversal of that decision is only warranted if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson,* 922 F.2d 311, 319 (6th Cir. 1990).  Importantly, the Sixth Circuit explained that "[t]his standard is objective and not based on the subjective view of a party." *Nelson,* 922 F.2d at 319.

-46-

To warrant recusal, "[b]ias . . . requires more than a favorable of unfavorable disposition toward an individual. Rather, it results from an opinion that is <u>wrongful</u> either because it is based on knowledge the judge should not possess, or because the opinion is excessively strong." *Cheese v. United States,* 290 Fed. Appx. 827, 830 (6th Cir. August 26, 2008) (citing *In re Triple S Restaurants,* Inc., F.3d 405, 417 (6th Cir. 2005); *Liteky v. United States,* 510 U.S. 540, 550 (1994)).

Recusal on the grounds of "bias or prejudice" is to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice, but its appearance. Recusal is required whenever impartiality might reasonably be questioned. *Liteky v. United States,* 510 U.S. 540 (1994). The Supreme Court explained that,

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes . . . necessary to completion of the judge's task.

*Liteky v. United States,* 510 U.S. 540, 550-51 (1994).

The existence of a professional relationship between the presiding judge and a victim in the case does not trigger mandatory disqualification. *United States v. Angelus,* 258 Fed. Appx. 840, (6th Cir. Dec. 27, 2007) (citing *Clemens v. United States District*

-47-

*Court for the Cent. District of Cal.,* 428 F.3d 1175, 1180 (9th Cir. 2005); *United States v. Faul,* 748 F.2d 1204, 1211 (8th Cir. 1984)). The fact that a professional relationship may exist between the presiding judge and a victim is not grounds for immediate recusal and a judge may act within her discretion in declining to recuse herself from the case.   *See, e.g., United States v. Faul,* 748 F.2d at 1210-11; *United States v. Ramsey*, 871 F.2d 1365, 267 (8th Cir. 1989); *Angelus,* 258 Fed. Appx. at 843-44.

Defendant's allegations of bias are tenuous, at best.   The Defendant argues only that the district court judge was biased because she is professionally acquainted with Judge Breen, a victim in the case against the Defendant.   According to the Defendant, the two judges would occasionally eat lunch together and are friends. The district court judge was not required to recuse herself simply because a professional relationship existed between her and the victim of the case.    Accordingly, the district court judge was within her discretion to decline to recuse herself.

C.   <u>The district court used its discretion properly in determining that the 18 subpoenas the Defendant requested to be served were unnecessary for a meaningful defense.</u>

The Defendant claims that he was denied a fair trial because the District court refused to issue 18 subpoenas that he requested. The Defendant's argument is unfounded, however, because the potential witnesses were not necessary for the Defendant to mount a meaningful defense.

-48-

Rule 17(b) of the Federal Rules of Criminal Procedure governs the issuing of a defendant's subpoenas. Rule 17(b) mandates:

> Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.

Fed. R. Crim. P. 17(b).

The trial court has discretion whether to grant a Rule 17(b) subpoena, subject to the protection offered by the Fifth and Sixth Amendments to the United States Constitution. *United States v. Reaves,* 194 F.3d 1315, *3 (6th Cir. 1999) (Table Opinion) (citing *United States v. Barker,* 553 F.2d 1013, 1019 (6th Cir. 1977)). As the Sixth Circuit noted, "[t]he right of an indigent criminal defendant to subpoena witnesses rests not only on Rule 17(b), but also on the Sixth Amendment right to compulsory process and on the Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status." *Barker,* 553 F.2d at 1019. Nonetheless, "a defendant is not automatically entitled to a Rule 17(b) Subpoena; in addition to alleging indigence, the defendant must first make a preliminary showing that the witness is 'necessary to an adequate defense.'" *Reaves,* 194 F.3d at *3 (citing *Moore,* 917 F.2d 215, 230 (6th Cir. 1990); *Barker,* 553 F.2d at 1020).

-49-

The Sixth Circuit has instructed that the word "necessary" means "relevant, material and useful to an adequate defense." *Moore,* 917 F.2d at 230. In order for a defendant to make a successful showing of necessity, the defendant must offer sufficiently specific reasons how the potential witness is relevant to the case. Mere "generalities . . . are insufficient to make out a satisfactory showing that the witnesses are needed." *Barker,* 553 F.2d at 1020-21.

In *United States v. Rigdon,* 459 F.2d 379 (6th Cir. 1972), the Sixth Circuit found that the defendant's allegations were "lacking in particular facts" even though the defendant stated that the witnesses would testify as to the defendant's whereabouts during the time when the crime allegedly was committed and that the testimony of those witnesses was material to his defense because he could not otherwise prove his alibi defense. This Circuit explained that claiming the witness would be necessary for "alibi as well as impeachment purposes" is a far too general statement and "does not constitute the sufficient averment of facts to constitute a substantial showing that the witnesses would be necessary to the presentation of an adequate defense." *United States v. Conder,* 423 F.2d 904, 909 (6th Cir. 1970).

The showing of necessity made by the Defendant in this case was insufficient to satisfy the requirements of Rule 17(b). The Defendant sought to subpoena 18 witnesses to help him prove his

choice of evils defense. As the Defendant was not entitled to proceed under his chosen theory of defense, the proposed witnesses would not have been helpful in mounting a meaningful defense. Moreover, the Defendant failed to specify precisely how each witness would be material to his defense. The Defendant alleges only that the witnesses would testify as to the Defendant's "'failure of proof' ordinary defense to the 'wilfully' mens rea intent elements." (Appellant's *pro se* Supplemental Brief, pg. 42). Accordingly, the district court acted well within its discretion in denying to issue the Defendant's requested subpoenas.

D.    <u>Defendant failed to meet his burden in his request for appointment of an investigator.</u>

An indigent defendant may obtain authorization for an investigative expert upon demonstration that the investigator's services are necessary to mount a plausible defense, and that without the investigator, the defendant's case would be prejudiced. *United States v. Gilmore,* 282 F.3d 398, 406 (6th Cir. 2002). A district court's refusal to appoint an investigator is reviewed for abuse of discretion. *Gilmore,* 282 F.3d at 406. "To justify authorization of investigative services under [section] 3006A(e)(1), a defendant must demonstrate with *specificity*, the reasons why such services are required. *United States v. Gadison,* 8 F.3d 186, 191 (5th Cir. 1993) (emphasis in original).

The Defendant contends that the district court erred when it declined to appoint an investigator at the expense of the United

-51-

States to allow him to develop evidence supporting the Defendant's choice of evils defense. The Defendant only stated that the witnesses he sought to call were necessary to the defense. The Defendant failed to show with specificity what each witness would offer the jury.

Applying these criteria to the Defendant's case, it is clear that the district court did not abuse its discretion in denying the Defendant's motion. First, the Defendant sought to obtain an investigator to assist him in mounting a choice of evils defense that was inapplicable to the case. The Defendant had hoped to obtain information and evidence related to irrelevant and collateral matters. Accordingly, the district court was within its discretion when it denied the Defendant's motion for an investigator.

Second, the Defendant was not prejudiced in any way by a lack of investigative services. Indeed, the Defendant confessed to the elements of the crime both on the stand during his testimony, and during his closing argument. The Defendant was also heard admitting to the elements of the crime during a taped jail phone call. Consequently, even if the court should have appointed an investigator, the Defendant can show no prejudice.

E.   <u>The record reveals that the prosecutor did not engage in any misconduct at trial nor did the prosecutor misstate or misrepresent the law.</u>

-52-

The Defendant argues that the prosecutor stated "wilfully is not even in the jury instructions." In fact, the prosecutor never made that statement. The record reflects that the prosecutor correctly pointed out that the Defendant's interpretation of the law was inaccurate. Consequently, the Defendant's argument fails as it is unsupported by the record. Moreover, even if the prosecutor made an improper statement, there is nothing in the record to warrant reversal.

"Allegations of prosecutorial misconduct contain mixed questions of law and fact that we usually review *de novo*." *United States v. Henry,* 545 F.3d 367, 376 (6th Cir. 2008) (citations omitted). The Sixth Circuit uses a two-step analysis to determine whether prosecutorial misconduct has occurred. *Henry,* 545 F.3d at 376; (citing *United States v. Francis,* 170 F.3d 546, 549 (6th Cir. 1999)). First the reviewing court must determine whether the statement was improper and second whether the statement was so flagrant as to warrant reversal. *Francis,* 170 F.3d at 549.

In this case the Defendant claims that the prosecutor stated, in his rebuttal closing argument that "wilfully is not even in the jury instructions." Indeed, the prosecutor made no such statement. The prosecutor actually stated in his rebuttal:

> The bottom line is, mailing a threatening communication to another individual is against the law. We could not present anymore proof than we presented and he confessed to it.

-53-

> Your job is to follow the law, not whatever he tells you,
> 'you got to find somebody that had a bad purpose,' that
> is nowhere in the jury instructions.

(R.E. #97, Jury Trial, 1/23/09 at TR 485). Indeed, the prosecutor's statement is accurate. Demanding that the jury find someone with "a bad purpose" is not in the jury instructions. See (R.E. #97, Jury Trial, 1/23/09 at TR 458-60). Consequently the Defendant's argument fails as it is unsupported by the record.

F. <u>The Court sentenced the Defendant within the statutory limitations.</u>

In his supplemental appellate brief, the Defendant claims that the Court sentenced him "off record" to a term of supervised release that exceeds the statutory maximum. The Defendant's conclusory claim is unsupported by the record. The record reflects that the Defendant was sentenced to a term of 60 months imprisonment, to be run concurrently to the Defendant's current prison sentence and a period of three years supervised release. (R.E. #109, Sentencing Hearing, 2/27/2009 at TR 24). Because the Defendant's claim that he was sentenced outside the statutory limits is unsupported by the transcript and the full record, his claim should fail as it is meritless.

G. <u>The Defendant is precluded from claiming ineffective assistance of counsel because he acted as his own counsel; even so, the record is insufficient to determine whether the Defendant received ineffective assistance from stand-by counsel</u>.

As grounds for an issue in his *pro se* supplemental brief, the Defendant raises a number of claims of ineffective assistance of

-54-

counsel.  The Defendant represented himself *pro se* at trial.  This Circuit has found that "a *pro se* defendant may not complain about the quality of his own defense by arguing that it amounted to ineffective assistance of counsel." *United States v. Atman,* 145 F.3d 1333 (6th Cir. 1998) (Table Opinion) (citing *United States v. Smith,* 907 F.2d 42, 45 (6th Cir. 1990)).  Accordingly, the Defendant's claim of ineffective assistance of counsel is meritless.  Even so, the Defendant's claim is not ripe for decision as the record is not complete on the issue.

Claims of ineffective assistance of counsel are mixed questions of law and fact.  Such claims are reviewed *de novo*. *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999). Ordinarily, appellate courts do not review claims of ineffective assistance of counsel on direct appeal.  *Massaro v. United States,* 538 U.S. 500 (2003); *accord United States v. Brown,* 276 F.3d 211, 217 (6th Cir. 2002). The Supreme Court explained that:

> When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.  Under *Strickland v. Washington,* 466 U.S. 668 (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.  The evidence introduced at trial, however, will be devoted to issues of guilt or innocence and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis.

*Massaro v. United States,* 538 U.S. at 504-05.

Nonetheless, if the record is "adequately developed to allow this court to assess the merits of the issue" then an exception exists and this Court may address the claim. *United States v. Cinnamon,* 112 Fed. Appx. 415, 420 (6th Cir. 2004). It is appropriate for this Court to determine whether trial counsel was ineffective is "trial counsel's ineffectiveness is apparent from the record." *United States v. Cinnamon,* 112 Fed. Appx. 415, 420 (6th Cir. 2004) (citing *United States v. Valdez,* 362 F.3d 903, 913 (6th Cir. 2004)).

Here, the record is not sufficient to evaluate the claimed ineffective performance of the Defendant's elbow counsel. Defendant claims that he made repeated requests of elbow counsel to file particular motions or prepare for trial. The fact-specific nature of the Defendant's ineffective assistance of counsel claims requires the submission of an affidavit or an evidentiary hearing in order to obtain testimony from the Defendant's "elbow counsel." Accordingly, the proper forum for disposing of the Defendant's ineffective assistance of counsel claims is through a Petition filed pursuant to 28 U.S.C. § 2255.

H.    <u>The Defendant, regardless of any error, received a fundamentally fair trial.</u>

The Defendant argues that he is entitled to a new trial on the grounds that a number of alleged errors, viewed in their totality, mandate a reversal of his conviction. This argument fails because

-56-

the Defendant has failed to demonstrate that he received a fundamentally unfair trial.

Errors that are harmless in isolation may cumulatively amount to a denial of due process. *Walker v. Engle,* 703 F.2d 959, 963 (6th Cir. 1983); *see also United States v. Parker,* 997 F.2d 219, 221-22 (6th Cir. 1993). Cumulative-error analysis requires that a defendant "show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. *United States v. Warman,* 578 F.3d 320, 349 (6th Cir. 2009) (quoting *United States v. Trujillo,* 376 F.3d 593, 614 (6th Cir. 2004)). Importantly, cumulative error analysis only applies to evaluate the effect of matters which this court determines to be error, not the cumulative effect of non-errors. *United States v. Rivera,* 900 F.2d 1462, 1471 (10th Cir. 1990); *see also Campbell v. United States,* 364 F.3d 727, 736 (6th Cir. 2004).

The district court as outlined in the foregoing arguments, did not err in its treatment of the Defendant during his case. Even if the district court had erred, the Defendant can point to no instance in which he was prejudiced. Given the overwhelming weight of the evidence and the Defendant's own admissions, Defendant cannot demonstrate that had any alleged errors occurred, the outcome of his case would have been different.

**V.**

**<u>CONCLUSION</u>**

Based upon the foregoing arguments, the conviction and sentence of MARSHAL WILLIAMS should be affirmed by this Court.

Respectfully submitted,

LAWRENCE J. LAURENZI
United States Attorney


By: <u>s/ Anne-Marie Svolto</u>
ANNE-MARIE SVOLTO
Assistant United States Attorney

-58-

**VI.**

**<u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(c)</u>**
**<u>FEDERAL RULES OF APPELLATE PROCEDURE</u>**

I, Anne-Marie Svolto, Assistant United States Attorney for the Western District of Tennessee, hereby certify that the foregoing Brief contains 13,382 words as stated on the processing system used in the typing of this document.

By:  <u>s/ Anne-Marie Svolto</u>
ANNE-MARIE SVOLTO
Assistant United States Attorney

## VII.

### <u>CERTIFICATE OF SERVICE</u>

I, Anne-Marie Svolto, Assistant United States Attorney for the Western District of Tennessee, hereby certify that I have forwarded a copy of the foregoing Corrected Brief, was forwarded by electronic means via the Court's electronic filing system to Robert Brooks, Attorney at Law, 100 North Main Street, Suite 2601, Memphis, Tennessee 38103.

This <u>2nd</u> day of February, 2010.


By:  <u>s/ Anne-Marie Svolto</u>
     ANNE-MARIE SVOLTO
     Assistant United States Attorney

VIII.

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. |
|---|---|
| Indictment | 1 |
| Minute Entry | 5 |
| Minute Entry | 10 |
| Motion | 12 |
| Order | 24 |
| Motion | 45 |
| Minute Entry (Report Date 1/6/09) | 47 |
| Jury Verdict | 98 |
| Notice of Appeal | 114 |

| DESCRIPTION OF PROCEEDING | |
|---|---|
| Trial Transcript 1/21/09 | 85 |
| Trial Transcript 1/22/09 | 91 |
| Trial Transcript 1/23/09 | 97 |
| Sentencing Hearing 2/24/09 | 105 |
| Sentencing Hearing 2/27/09) | 109 |

## Exhibits

(See Record Entry No. 102 for Exhibit List for 1/21/09 Trial)

1 (envelope addressed to Judge Breen)

3 (letter from exhibit #2)

11 (CD phone call)